**In re Mark Edward DRESSEL, Debtor.**

**Alfred T. ZLOTOPOLSKI,
et al., Plaintiffs,**

**v.**

**Mark Edward DRESSEL, Defendant.**

**Bankruptcy No. 96–48253–293.
Adversary No. 97–4004–293.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Sept. 11, 1997.

William K. Meehan, St. Louis, MO, for Debtor.

Rhona S. Lyons, St. Louis, MO, for Plaintiffs.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. Mark Edward Dressel and his wife filed a petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) on October 4, 1996.

2. On Friday January 3, 1997, Alfred T. Zlotopolski et al. ("Plaintiffs") attempted to file this adversary complaint challenging the discharge of the debt Dressel owed to the Sheet Metal Workers' Joint Apprenticeship and Training Committee ("Apprenticeship Committee"). The Clerk of the Court refused to file Plaintiffs' complaint because the appropriate filing fee did not accompany it.

3. On the next Monday, January 6, 1997, Plaintiffs filed their complaint, this time with the proper fee.

4. Dressel filed an answer to Plaintiffs' complaint in which he maintained that the complaint was untimely because the deadline established for filing challenges to discharge was January 4, 1997.

5. The Court held a hearing on the merits of Plaintiffs' complaint on August 19, 1997 at which both parties were represented by counsel. Upon request of the parties, the Court stated that it would accept letters of authority.

6. Plaintiffs submitted a letter of authorities to the Court but by August 27, 1997, Debtor had failed to file one with the Court.

### JOINT STIPULATION OF FACTS

The parties stipulated to the following facts as true:

1. The Sheet Metal Workers' International Association Local Union No. 36 (Local 36) and the Sheet Metal and Air Conditioning Contractors National Association, Incorporated, St. Louis Chapter have established the Apprenticeship Committee.

2. Mark E. Dressel participated in the apprenticeship training program ("Apprenticeship Program") funded by the Apprenticeship Fund from January of 1985 to July 1990.

3. The Apprenticeship Program provides apprentices with education and training in the specialized skills required for employment in the Sheet Metal Industry through both classroom teaching and field work.

4. Dressel received education and training in the Apprenticeship Program in the specialized skills of the Sheet Metal Industry.

5. Each of the five loan agreements signed by Dressel provided for interest at the prime rate prevailing as determined by The Riggs National Bank of Washington, D.C., from the date of the Note.

6. Each of the five loan agreements signed by Dressel provided for the payment of attorney fees incurred in collection in the event of default.

7. After January 1990 Dressel worked for Superior Equipment and Crestside Heating and Cooling as a service technician.

8. Neither Superior Equipment nor Crestside Heating and Cooling was an employer making contributions to the Apprenticeship Fund.

9. The Apprenticeship Fund filed suit against Dressel in the United States District Court for the Eastern District of Missouri for breach of the five apprenticeship loans, Case No. 4;95CV1689 LOD.

10. On December 2, 1996, the Honorable Lawrence O. Davis, United States Magistrate Judge for the United States District Court for the Eastern District of Missouri, granted the Fund's Motion for Summary Judgment, ruling that the Defendant had breached the loan agreements and ordered that he pay the principal sum of $8,593.00, plus accumulated interest of $1,908.80, post-judgment interest at a rate of 5.81 percent until completely paid, attorneys' fees of $4,621.25, and expenses of $274.21.

11. Dressel is married to Renee C. Dressel. They have two children.

12. On October 4, 1996, Mark and Renee Dressel filed a Chapter 7 Bankruptcy petition, 96–48253–293.

13. In their bankruptcy schedules, Mark and Renee Dressel listed debts of among others, $9,256 to Mercantile Bank for a car loan and $287 to Famous–Barr for clothing, both of which they have reaffirmed.

14. Dressel, his wife, and his children are all in good health.

15. In 1994, Mark Dressel earned $32,-895, and Mark and Renee Dressel's combined income was $53,222.

16. In 1995, Mark Dressel earned $35,-564, and Mark and Renee Dressel's combined income was $74,496.

17. In 1996, Mark Dressel earned $28,-496, and Mark and Renee Dressel's combined income was $52,303.

18. To date in 1997, Dressel was employed by Rock Hill Mechanical Corporation from February to June for which he grossed $19,777.25 and by Translogic in June for which he grossed $1,176.00

## FACTUAL FINDINGS

Based upon the testimony and evidence presented at the August 19, 1997 hearing, the Court makes the following additional findings:

1. The Apprenticeship Committee does not receive money from Local 36 but funds the Apprenticeship Program through contributions from employers and employees covered by the Local's collective bargaining agreement; these funds are deposited into the Apprenticeship Fund.

2. The Apprenticeship Committee maintains the Apprenticeship Fund in bank accounts separate and independent from those of Local 36. The Apprenticeship Committee uses the money from the Apprenticeship Fund to buy materials used in the apprenticeship program, to rent classrooms where instructors teach the apprentices, and to pay the teachers and administrators who run the program. The Apprenticeship Fund does not generate a profit and none of the funds in it are distributed as a dividend.

3. The Apprenticeship Fund is recognized by the IRS as a tax exempt, not-for-profit organization.

4. The Apprenticeship Committee owns some of the equipment that is used during the apprentices' instruction but has no other assets.

5. The Apprenticeship Committee loans money from the Apprenticeship Fund to apprentices who use the loan proceeds to pay the expenses of their participation in the Apprenticeship Program. Loan Agreements evidence these extensions of credit and, by their terms provide that the apprentice/bor-

rower "will neither seek nor accept employment from an Employer engaged in, nor become an Employer engaged in, any general, mechanical sheet metal, testing and balancing, roofing, residential, sign or food service work or any other work covered by the Constitution of the Sheet Metal Workers' International Association unless such employment is performed under the terms of a collective bargaining agreement that provides for the payment of contributions by such Employer to the [National Training Fund for the Sheet Metal and Air Conditioning Industry ("NTF") ] or to the [Apprenticeship Committee] or to another Joint Apprenticeship and Training Committee sponsored by or affiliated with a local union of the [Sheet Metal Workers' International Association]." The loan agreements further provide that the apprentice/borrower breaches the agreement if he accepts employment from an employer "who does not have a collective bargaining agreement in the Sheet Metal Industry that provides for the payment of contributions to the NTF, the local Apprenticeship Committee or an affiliated Joint Apprenticeship and Training Committee." Upon breach, the loan agreements provide that the balance of the loan made to the apprentice/borrower becomes immediately due and payable together with interest from the date of the breach.

## DISCUSSION

As the Court noted at the August 19 hearing, there are three issues that it must address. First, the timeliness of the Plaintiffs' complaint is in dispute. The second issue is whether the Apprenticeship Committee is a nonprofit organization as that term is used in section 523(a)(8) and whether the loans Dressel owes to the Apprenticeship Committee are education loans under that section. The third issue is whether not discharging the loans Dressel owes to the Apprenticeship Committee would impose an undue hardship on him and his dependents. The Court will consider these issues in series.

■ Dressel maintains that the Plaintiffs' complaint was not timely filed because it was filed after January 4, 1997, the date set by Federal Rule of Bankruptcy Procedure 4007 as the final day for filing challenges to Debtor's discharge (i.e. the sixtieth day after the first date set for the meeting of creditors in Debtor's case). Federal Rule of Bankruptcy Procedure 9006(a) ("Rule 9006(a)") provides that when the last day of a time period prescribed by the Federal Rules of Bankruptcy Procedure falls on a Saturday the period is extended to the next day that is not a Sunday or legal holiday. Plaintiffs filed their petition on the Monday immediately following the Saturday on which the period prescribed for filing challenges to discharge purportedly ended. By the operation of Rule 9006(a) the deadline to file challenges to discharge was extended to Monday January 6, 1997 and, therefore, the Plaintiffs' complaint was timely filed.

The Court will next consider the second issue, whether the Apprenticeship Fund is a nonprofit organization as that term is used in section 523(a)(8)[1] and whether the loans Dressel owes to the Apprenticeship Fund are education loans under that section. A case from the bankruptcy court for the district of Oregon examined these issues in a case very similar to the case at bar. *See Plumbers Joint Apprenticeship and Journeyman Training Comm. v. Rosen (In re Rosen)*, 179 B.R. 935 (Bankr.D.Ore.1995).

The *In re Rosen* court concluded that the loan obligations the debtor had incurred to pay for his participation in a union-run apprenticeship program were "educational" loans[2] within the meaning of section

---

**1.** As applicable to this case, section 523(a)(8) excepts from discharge any debt:

(8) for an educational benefit overpayment or loan ... made under any program funded in whole or in part by a ... nonprofit institution ... unless—

(A) such loan, benefit, scholarship overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

**2.** As the Eighth Circuit Court of Appeals has noted, the Bankruptcy Code does not define the term "educational loan." See *United States*

523(a)(8). *Id.* at 938. The *In re Rosen* court first examined the language of section 523(a)(8) and noted that it applied to "educational" loans and was not limited to educational loans used to fund higher or post secondary education. The court then reviewed the legislative history of section 523(a)(8) and made two observations. One, Congress, through successive amendments, had expanded the scope of the non-dischargeability section from loans for higher or post-secondary education to educational loans in general. *Id.* Two, Congress had reasoned that if student loans were readily dischargeable in bankruptcy, the student loan system would fail because repayments from the system's past beneficiaries are used to fund loans to future student-borrowers. *Id.* Like the federal student loan program, the union-run apprenticeship program in *In re Rosen* relied upon the repayment of loans to perpetuate itself. Because section 523(a)(8) was not limited to loans for higher education and the union-run apprenticeship program was self-perpetuating, the *In re Rosen* court concluded that section 523(a)(8) applied to the loans Rosen had incurred to fund his participation in the union-run apprenticeship program provided the program was educational in nature. The *In re Rosen* court determined that the apprenticeship program was educational because it "offered apprentices the opportunity to expand their knowledge of matters pertaining to the plumbing profession, enhance their professional capabilities, obtain the qualifications and experience necessary for a professional license and obtain college credits." *Id.* at 939.

■ The Court agrees with the reasoning of *In re Rosen.* In the case at bar, Dressel obtained loans that enabled him to participate in the Apprenticeship Program. Although union-sponsored, the Apprenticeship Program in which Dressel participated is self-funded and self-perpetuating. Through his participation in the Apprenticeship Program, Dressel learned the skills necessary to a sheetmetal worker. The Court concludes that the loans Dressel incurred to participate in the Apprenticeship Program are educational loans within the meaning of section 523(a)(8).

■ Not all educational loans, however, are nondischargeable under section 523(a)(8). Instead, the section bars the discharge of only those educational loans that were extended by, insured or guaranteed by either a governmental unit or a nonprofit institution.[3] The testimony established that the Apprenticeship Committee does not earn a profit and owns only assets used in the instruction of apprentices. The Internal Revenue Service recognizes the Apprenticeship Fund, which the Apprenticeship Committee manages, as a tax exempt organization. The Court concludes that the Apprenticeship Committee is a nonprofit institution. Having determined that the Apprenticeship Committee is a nonprofit institution and that the loans the Apprenticeship Committee extended to Debtor were educational loans, the Court holds that section 523(a)(8) renders those loans nondischargeable unless excepting them from discharge would impose an undue hardship on Debtor.[4]

■ In determining whether excepting a debt from discharge will cause undue hardship to a debtor, the majority of courts have applied a three-part test articulated by the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987). *See also In re Hoyle,* 199 B.R. 518 (Bankr.E.D.Pa.1996); *A.L. Lee Memorial Hospital v. McFadyen In re McFadyen,* 192 B.R. 328 (Bankr.N.D.N.Y.1995); *In re Rosen,* 179 B.R. 935 (Bankr.D.Ore.1995). Under the *Brunner* test undue hardship ex-

---

*Dept. of Health and Human Servs. v. Smith,* 807 F.2d 122, 126 (8th Cir.1986).

**3.** As the First Circuit Court of Appeals has noted, "there is no clear cut test for 'determining when a nonprofit institution is—or is not—a nonprofit institution under section 523(a)(8).'" *TI Federal Credit Union v. DelBonis,* 72 F.3d 921, 927 (1st Cir.1995).

**4.** The Court notes that educational loans made by a nonprofit institution would also be dischargeable if they had first come due more than seven years before the debtor filed his petition in bankruptcy. See 11 U.S.C. 523(a)(8). It is undisputed in the case at bar that the loans Dressel owes to the Apprenticeship Committee did not first come due more than seven years before he filed his petition in bankruptcy.

ists if: 1) The debtor cannot maintain, based upon his current income and expenses, a minimal standard of living for himself and his dependents; 2) additional circumstances exist that indicate debtor's present financial circumstances are likely to persist for a significant period of the loan repayment period; and, 3) the debtor has made a good faith effort to repay the loan. 131 B.R. at 375. The Debtor bears the burden of proof on each element of the test. *See In re Rosen,* 179 B.R. at 937 (debtor bears burden of proving dischargeability under section 523(a)(8)).

■ In the present case, it has been stipulated that during a period of less than five months in 1997, Dressel earned $19,777.25, suggesting that Debtor may have a capacity to earn approximately $48,000.00 a year. In the three years preceding his filing, Debtor earned $32,895.00, $35,564 and $28,496. The judgment the district court awarded the Plaintiffs totals more than $15,000. Debtor argued that repaying the judgment he owes the Plaintiffs would impose undue hardship on him and his dependents because since he filed bankruptcy his wife has separated from him and he now must support two households, namely, his and his wife and children's. Debtor's counsel argued that after paying support for his children and other student loans the Debtor owes, Debtor will have only approximately one thousand dollars remaining to support himself each month. Debtor did not support these assertions with evidence but even if Dressel will only have one thousand dollars to support himself with each month, the Court finds that he could maintain himself at a minimal standard of living with such an amount. In those cases where undue hardship has been found, debtors earned income insufficient to satisfy their basic needs. *See Hoyle v. Pennsylvania Higher Educ. Assistance Agency,* 199 B.R. 518 (Bankr.E.D.Pa.1996) (debtor's monthly income exceeded her monthly expenses by only $17 and her budget did not include expenses for necessary care she required including; eyeglasses, dental work, and treatment of her depression); *In re Kincaid,* 70 B.R. 188 (Bankr.W.D.Mo.1986) (debtors' family budget contained no excess of income over expenses and debtor/wife was pregnant

with debtors' second child). As to Dressel's daughters, the Court finds that the support that the family court will order Dressel to pay will provide them with at least a minimal standard of living.

Looking to the second prong of the *Brunner* test, the only evidence regarding the stability of Debtor's financial condition was his own testimony. In response to a question about whether he could work overtime to augment his income, Debtor stated that at his current place of employment he had the opportunity to earn overtime pay on an unpredictable basis and added that there was also a chance he would not continue to work as many hours as he had recently been working. From this one comment the Court cannot conclude that Debtor's current financial circumstances will either improve or diminish in the foreseeable future and, therefore, concludes that Debtor has not carried his burden of proving that his financial situation will deteriorate.

Under the third prong of the *Brunner* test, the Court must consider whether Debtor has made a good faith effort to repay the educational loans he now seeks to have discharged. There was no testimony or evidence presented regarding Debtor's efforts to repay the educational loans he owes to the Plaintiffs. However, Plaintiffs submitted loan agreements demonstrating that Debtor had borrowed a total of $11,030.00 from them. The district court for the Eastern District of Missouri granted Plaintiffs a judgment for principal totaling $8,593.00 suggesting Debtor or another paid $2,437.00 to Plaintiffs. No evidence was presented regarding the timing of Debtor's payments to Plaintiffs or whether the principal owed to Plaintiffs was paid down by Dressel, his employer, both or another party. The Court cannot determine, on the basis of the record presented, whether Debtor has made a good faith effort to repay the debt he owes to Plaintiffs. The Court concludes Debtor has not met his burden of proving that he has made a good faith effort to repay the debt he owes to Plaintiffs.

Having applied the *Brunner* test for undue hardship, the Court holds that Debtor has

failed to meet his burden of proving that excepting the Plaintiffs' debt from discharge would impose an undue hardship upon him and his dependents.