In re Stephen Allen REZENDES and L. Irene Rezendes, Debtors.

Joint Apprenticeship Comm. of United Ass'n Local Union No 307 n/k/a Plumbers 210 Joint Apprenticeship and Journeyman Upgrade Trust Fund, Plaintiff,

v.

Stephen Allen Rezendes, Defendant.

Bankruptcy No. 02–61217 JPK.
Adversary No. 02–6120.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Feb. 5, 2004.

P. Jeffrey Schlesinger, Esq., Crown Point, IN, for defendant.

Thomas E. Moss, Esq., Paul T. Berkowitz & Associates, Ltd., Chicago, IL, for plaintiff.

## MEMORANDUM OF DECISION

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

In this case, initiated by complaint filed by the plaintiff Joint Apprenticeship Committee of United Association Local Union No. 307 n/k/a Plumbers Local Union 210 Joint Apprenticeship and Journeyman Up-

grade Trust Fund ("JATC"), to which the defendant Stephen Allen Rezendes ("Rezendes") filed an answer on August 15, 2002, JATC seeks a determination that an obligation which it asserts against Rezendes is excepted from discharge under 11 U.S.C. § 523(a)(8). The Court has subject matter jurisdiction with respect to this adversary proceeding by operation of 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and N.D.Ind.L.R. 200.1. This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Trial to the bench was conducted on July 24, 2003, and pursuant to the Court's order of July 31, 2003, the parties have submitted post-trial memoranda on certain of the issues presented to the Court in this case.

### I. Issues Before the Court

The principal issue in this adversary proceeding is whether or not the obligation asserted by JATC against Rezendes is excepted from discharge by operation of 11 U.S.C. § 523(a)(8). In response, Rezendes has raised the following issues: [1]

A. Did the alleged failure of a presupposed condition—that during his apprenticeship Rezendes would be able to find employment with a union plumbing contractor—cause agreements between JATC and Rezendes to become unenforceable under principles of contract law?

B. Did Rezendes enter into the subject agreements under duress?

### II. Determination of Facts

The Court first compliments counsel for the parties on their pre-trial submissions,

---

1. In his post-trial brief, Rezendes withdrew an issue concerning whether or not documents which he signed with respect to the obligation asserted against him by JATC were effectively executed by both parties to those agreements. In his post-trial brief, Rezendes has also conceded that if his underlying obligation to JATC is deemed to be nondischargeable, attorney's fees and costs incurred by JATC in collecting that indebtedness are also nondischargeable; [Post–Trial Brief, p. 5].

and on their mutual cooperation concerning the submission of evidence at the trial. Counsel prepared a detailed pre-trial order which outlined the issues, clearly stated their respective contentions, and included stipulations as to certain facts and with respect to the admissibility of certain documents. At the trial, counsel continued to fully cooperate concerning issues regarding the admissibility of evidence, and both were respectful of each other and of their respective witnesses.

In sub-part C of their Pre–Trial Statement filed on July 23, 2003, the parties entered into certain stipulations of undisputed material facts. JATC is a "nonprofit institution" as that term is used in 11 U.S.C. § 523(a)(8), and the apprenticeship program run by JATC in which Rezendes was involved "is educational". Rezendes received the benefit of JATC's "training, instructors, services, supplies and materials for each school term," and he "entered into three apprenticeship scholarship loan agreements for the September 1997 to June 1998, September 1998 to June 1999, September 1999 to June 2000 school terms". Rezendes "thereafter breached the Scholarship Loan Agreements by accepting employment with non-signatory contractors". Due to "Rezendes' breach of his contractual obligations and his refusal to repay the monies owed pursuant to the parties' Scholarship Loan Agreements," JATC "incurred substantial legal fees and other expenses to pursue the collection of the amount due for which Defendant Rezendes was obligated to pay". JATC obtained a judgment against Rezendes in the United States District Court for the Northern District of Indiana on November 20, 2001 in case number 2:01–CV–409, in the amount of $6,254.60.

JATC derives its existence from provisions of collective bargaining agreements and trust fund agreements which have been entered into between Plumbers Local Union 210 and the plumbing contractor/employer entities which are signatories to those agreements; however, JATC is an entity which operates independently of Local 210, and it is not a subsidiary or affiliated entity with respect to the Local. Under the terms of those agreements, signatory employers fund JATC by means of payments they make independently of employment compensation paid to their employees, i.e., JATC is not funded by "checkoff" deductions made from employees' wages. The amount of these payments is provided for by the collective bargaining agreement; at time periods relevant to this case, the funding rate was $0.65 per hour for each hour worked for a signatory union employer by a journeyman plumber having 2–5 years of experience. The funding rate has been adjusted as part of negotiated collective bargaining agreements, to seek to make certain that JATC received funds sufficient for its operation. This means of funding is the exclusive source of revenue for JATC, with the exception of some interest earned on certificates of deposit and accounts into which JATC deposits certain of its funds until the funds are needed to operate its program.

JATC operates an apprentice training program by which individuals receive training as plumbers and pipefitters. The program is a five-year program; upon the completion of the program, the student will receive an Associate's Degree in Applied Science and will be a licensed journeyman plumber with the State of Indiana. During the years in which an individual participates in the program, students practice the trade by being employed by union signatory contractors and are paid at the rate of compensation stated in the collective bargaining agreement for their services. The students are not paid for the class time and training time during their

attendance at JATC's program sessions. The training sessions involve both classroom instruction and hands-on training in the manual aspects of plumbing and pipefitting, and the "school year" is typically from late August through the end of May. Participation in the JATC program is required for individuals who wish to obtain employment through Plumbers Local Union 210 with a signatory employer, except in rare instances in which a State-licensed plumber/pipefitter who had previously worked for a nonunion contractor and possesses the level of experience which would have been obtained in the program, joins the union.

The school operated by JATC provides the physical structure in which the school is operated, which it leases; instructors; textbooks; supplies for hands-on classroom work; and the other items of overhead incurred in the operation of the program. Students are not charged a fee for attendance. However, the annual cost of providing each student with training—determined by dividing the estimated annual cost for the operation of the JATC program by the number of students in the program (usually approximately 50)—is the subject of an agreement which each student is required to sign at the beginning of each new training year. Tom Thiel, the training director for Plumbers Local 210, testified that JATC considers the provision of the costs of training to students to be a form of scholarship or extension of credit. Mr. Thiel also testified that no money or other funds are actually given directly to the apprentices.

At the beginning of each training year, apprentice trainees are required to sign a document entitled "Apprentice Scholarship Agreement Between Apprentice and Joint Apprenticeship Committee"; Rezendes signed three of these agreements, one for each of the respective training periods:

September 1997 to June 1998, September 1998 to June 1999, and September 1999 to June 2000. For each of the designated training periods, Rezendes also signed a document entitled "Apprentice Promissory Demand Note for Scholarship Loan Agreement". Because these documents so clearly and specifically describe the arrangement between the parties at issue in this case, those documents are attached to this opinion as Group Exhibit "A" rather an extending this opinion with a recitation of numerous of the specific provisions of those documents.

As provided in paragraph 4 of the attached annual agreements, the amounts of the estimated annual training costs apportionable to each apprentice may be repaid either in cash or in-kind credits. As stated in paragraph 7 of each of the agreements, for each year that an apprentice works "pursuant to a collective bargaining agreement for an Employer making payments to the committee or a like Joint Apprenticeship Committee or Training Committee", the amount of the apprentice's obligation on the notes is reduced in accordance with the schedules stated in the notes. Thus, for every year that an apprentice accepts only employment with a signatory union contractor, the apprentice's obligation for repayment of the notes is reduced commensurately. However, as stated in paragraph 6 of each of the agreements, a breach of the agreement occurs "if the Apprentice accepts employment in the Plumbing and Pipe Fitting Industry from an Employer who does not have a collective bargaining agreement which provides for the payment of contributions to the Committee or like Joint Apprenticeship Committee". Paragraph 8 of each of the agreements provides that if a breach occurs, "all amounts due and owing on the Scholarship Loan, reduced by an [sic] credit received by the Apprentice pursuant to

Paragraph 7 hereof, or by any cash payments made, will become immediately due and payable", together with interest, attorney's fees and court costs.

An apprentice cannot participate in the JATC program unless he/she signs the required note and agreement. As stated in paragraph 6 of the agreements, and as Mr. Thiel testified on page 44 of the trial transcript, a breach of the agreement triggering an obligation to repay the balance of the amounts stated in the notes occurs *only* if a participant goes to work in the plumbing/pipefitting trade for a nonsignatory contractor. If the participant decided that he/she no longer wished to pursue the trade, dropped out of the program, and then pursued another means of earning a living, there would be no obligation to repay the unsatisfied balance of the notes outstanding at the time that person left the program. As Mr. Thiel testified, the "reason for the promissory note and the scholarship agreement is so we don't train people to go to work for a nonsignatory contractor. We want 'em to stay and work for our contractors and that's the reason".

After three years of participation in the apprenticeship training program, at which time when he was employed he was employed exclusively by signatory union contractors, Rezendes obtained employment with a non-signatory contractor. This gave rise to the asserted breach of the agreements which triggered Rezendes' liability under the notes, which resulted in the judgment obtained by JATC in the United States District Court.

Through his testimony, Rezendes submitted evidence concerning his contractual defenses and his contention that repayment of obligations to JATC constitutes an "undue hardship" within the meaning of 11 U.S.C. § 523(a)(8).

The basic expectation regarding future employment which Mr. Rezendes had when he entered the JATC program was stated as follows in his trial testimony (Trial Transcript, page 71):

Mr. Schlesinger: Was it your expectation when you entered the apprenticeship program that you would be able to find regular employment from a signatory contractor?

Mr. Rezendes: It was my understanding that I would work at least most of the time. I understood the construction business and the layoffs, but work was good at the time and usually most of the guys, if not all, were working.

Rezendes worked for most of the first year of his participation in the program, but he was laid off for a couple of months. The layoff "came two days after I complained of a, a sore back and I went to the chiropractor". (Trial Transcript, page 66). He worked throughout most of his second year of participation in the program, and throughout most of the third year he "would work for a couple of months and be home for a while and it was sporadic". (Trial Transcript, page 68). He did not sign up for the fourth year of the program and began working for a nonsignatory plumbing contractor.

Tom Thiel testified that there is no guarantee that any apprentice will find work as a journeyman, but that the reason for the operation of JATC is to train people so that they have the skills to be a successful journeyman. There was an expectation on the part of both JATC and the students that the students would be able to find work with signatory employers. While there is no written or oral agreement, JATC tries to do its "utmost to make sure that [students] are employed as much as possible, but because this is construction it happens there's unemployment". (Trial Transcript, pages 26–27).

There is no evidence in the record that any threats or physical coercion were visited upon Rezendes with respect to his enrollment or participation in the JATC program.

### III. *Legal Analysis*

The first issues to be addressed are Rezendes' asserted contract defenses of duress and frustration of purpose/mutual mistake. If either, or both, of these defenses are sustainable, there is no enforceable agreement between JATC and Rezendes.

The contractual defenses raised by Rezendes are matters of state, not federal, law. It is apparent, and the parties do not dispute, that Indiana law applies to those defenses in this case.

In Indiana, the concept of duress requires wrongful and oppressive conduct on the part of one of the contracting parties. Under Indiana law, duress requires "an actual or threatened violence or restraint of a man's person, contrary to law, to compel him to enter into a contract or discharge one;" *Williamson v. Bendix Corp.*, 289 F.2d 389, 392 (7th Cir.1961); *Raymundo v. Hammond Clinic Association*, Ind., 449 N.E.2d 276, 282–283 (1983). Indiana does not recognize the concept of economic-based duress, as explained in *Flynn v. Aerchem, Inc.*, 102 F.Supp.2d 1055, 1061 (S.D.Ind.2000):

> The traditional defense of duress in Indiana does not include economic duress. *See Williamson v. Bendix Corp.*, 289 F.2d 389, 392 (7th Cir.1961). Modern courts, however, interpret duress as a deprivation of the free exercise of the victim's own will, which may include economically-based duress. *See City of Evansville v. Conley*, 661 N.E.2d 570, 574 (Ind.Ct.App.1996) (quoting *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 283 (Ind.1983) ). The assertion of

duress must still be supported by evidence establishing that the duress resulted from the defendant's wrongful and oppressive conduct and not by the plaintiff's necessities. *See Williamson*, 289 F.2d at 393; *Day v. Bicknell Minerals, Inc.*, 480 N.E.2d 567, 571 (Ind.Ct. App.1985). Mere threats, inconvenience, or delay do not constitute duress unless they truly subvert the victim's will. *See Raymundo*, 449 N.E.2d at 283.

Finally, a party who accepts the benefits of a contract, even one induced by fraud or duress, cannot subsequent to obtaining those benefits repudiate that contract: "a party may not claim benefits under a transaction or instrument and, at the same time, repudiate its obligations (citation omitted)", *Raymundo*, *supra*, at 283. In this case, the evidence establishes that Rezendes entered into the agreements and promissory notes with JATC of his own volition, in order to hopefully advance his prospects for employment in the plumbing/pipefitting trades. There was no threat or physical coercion which compelled him to do so. There was no economic duress, even if that were a concept that Indiana law recognized: the "economic" inducements for Rezendes to enter into the arrangements with JATC arose solely from his desire to seek to obtain training in the plumbing/pipefitting trades in the hope of generally bettering his economic circumstances.

The asserted contract defense of duress has no validity.

Rezendes also asserts that his obligations to JATC under the agreement/promissory notes are unenforceable under essentially the doctrine of frustration of purpose, failure of presupposed conditions, or a hybrid of the contract doctrine of mutual mistake of fact.

■ To the extent that Rezendes' defense seeks to assert the doctrine of frustration of purpose, Indiana does not recognize that doctrine; *Justus v. Justus*, Ind. App., 581 N.E.2d 1265, 1275 (1991), *reh. den.* 1992; *Ross Clinic, Inc. v. Tabion*, Ind.App., 419 N.E.2d 219, 223 (1981).

■ Rezendes' defense of mutual mistake is also unavailing. That doctrine has been defined in Indiana as follows; In *Perfect v. McAndrew*, Ind.App., 798 N.E.2d 470, 478 (2003):

> The doctrine of mutual mistake provides that "[w]here both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties." *Bowling [v. Poole]*, 756 N.E.2d [983] at 988–989 [(Ind.Ct. App.2001)] (quoting *Wilkins [Wilkin] v. 1st Source Bank*, 548 N.E.2d 170, 172 (Ind.Ct.App.1990) ). "It is not enough that both parties are mistaken about any fact; rather, the mistaken fact complained of must be one that is 'of the essence of the agreement, the *sine qua non*, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties.'" *Bowling*, 756 N.E.2d at 989 (quoting *Jackson v. Blanchard*, 601 N.E.2d 411, 416 (Ind.Ct. App.1992) ).

The evidence establishes that both Rezendes and JATC contemplated and understood the vagaries of employment in a construction trade, and that consistent and continuous employment by a signatory union contractor could not have been a basis of the bargain between the parties with respect to Rezendes' training by JATC.[2] The evidence in this case establishes that Rezendes entered into the JATC apprenticeship training program without compulsion, and without any reasonable expectation, or promise from JATC, that the training would result in any promised level of employment by a contractor who is a signatory to the union collective bargaining agreements.

The issue before the Court now becomes whether or not the obligation evidenced by the judgment of the United States District Court is excepted from discharge by operation of 11 U.S.C. § 523(a)(8), and even if so excepted, whether the obligation should be discharged due to "undue hardship" as provided for by that statute.

In order to fully analyze the scope of the discharge exception provided by 11 U.S.C. § 523(a)(8), it is necessary to dissect the precise language of that statute in terms of the obligations which it covers.

■ Section 523(a)(8) excepts from discharge "any debt ... for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend". The statute provides that the following forms of "educational" assistance are excepted from discharge:

---

2. The evidence also indicates that certain of the problems experienced by Rezendes in obtaining consistent employment by a signatory contractor arose from problems he experienced as a result of a back injury. Even if his inability to obtain employment somehow arose from discrimination by a prospective employer due to a perceived disability or Rezendes' resort to benefits under workman's compensation laws—issues with respect to which the Court expresses no opinion—that would not eviscerate Rezendes' contractual obligations.

1. An educational benefit overpayment or loan made, insured or guaranteed by a governmental unit;

2. An educational benefit overpayment or loan made under any program funded in whole or in part by a governmental unit;

3. An education benefit overpayment or loan made under any program funded in whole or in part by a nonprofit institution;

4. An obligation to repay *funds received* as an educational benefit;

5. An obligation to repay *funds received* as a scholarship; or

6. An obligation to repay *funds received* as a stipend.

Analyzed properly, the last phrase of the portion of the statute which defines the nature of the obligations excepted from discharge does not require the involvement a governmental unit or nonprofit institution.

On page 6 of his post-trial brief, Rezendes concedes "that the nature of this benefit was educational and that it was funded, in part, by a nonprofit institution". Rezendes then challenges whether or not the arrangement constituted a "loan". As outlined above, proper analysis of § 523(a)(8) focuses on a governmental unit or nonprofit institution only in the context of a "educational benefit overpayment" or "loan".

First, it is necessary to address the provisions of § 523(a)(8) under which the JATC program does not fall.

▓▓ JATC's asserted obligation obviously does not qualify as an "educational benefit overpayment", because no payments were ever made by JATC to anyone. Just as obviously, the obligation does not fall within the "second prong" of § 523(a)(8), which requires "an obligation to repay **funds received** as an educational benefit, scholarship or stipend"; (emphasis supplied). Statutes which provide for debts excepted from discharge must be strictly construed, and the parameters of the nondischargeability of a debt provided by that statute cannot be broadened by an expansive construction of the terminology used. As stated in *In re Morris,* 223 F.3d 548, 552 (7th Cir.2000):

> [W]e recognize that " 'exceptions to discharge are to be constructed strictly against a creditor and liberally in favor of the debtor.' " *Goldberg Securities, Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985)).

The foregoing provision of § 523(a)(8) requires that funds actually have been received by the person against whom the action for nondischargeability is directed. It is undisputed in this case that no funds were ever received by Rezendes from JATC; rather, the obligation sought to be enforced by JATC is simply the estimated costs incurred by JATC for providing Rezendes with his training. JATC obviously does not dispute this point: in Section B, paragraph 3 of the parties' pre-trial statement filed on July 23, 2003, JATC asserted its claim to nondischargeability solely on the premise that Rezendes' obligations constitute "educational loans" within the provisions of § 523(a)(8). Because no funds were received by Rezendes by JATC, this portion of the statute is not applicable to the circumstances of this case; *In re Renshaw,* 222 F.3d 82, 92 (2nd Cir.2000); *In re Rosen,* 179 B.R. 935, 939 (Bankr.D.Or.1995).

The exception from discharge of Rezendes' obligations to JATC thus rises or falls on whether those obligations constitute "an educational ... loan ... made

under any program funded in whole or in part by a ... nonprofit institution".[3]

■ The key to properly analyzing 11 U.S.C. § 523(a)(8) in the context of this case is to understand that the word "educational" and the word "loan" cannot be separately analyzed as concepts. Rather, the concept within the exception to discharge provided by the statute is "educational loan", and it is this holistic concept that must be applied to the circumstances of this case.

■ In its proper context, the "relevant inquiry into the applicability of [§ 523(a)(8)] is the purpose of the loan, not the beneficiary of the education"; *In re Varma*, 149 B.R. 817, 818 (N.D.Tex.1992).

■ The purpose of JATC's program, from which derives the obligation it seeks to enforce upon Rezendes, was stated by Training Director Thomas G. Thiel to be "so we don't train people to go work for a nonsignatory contractor. We want 'em to stay and work for our contractors and that's the reason (for the promissory note and the scholarship agreement)"; Trial Transcript, p. 44. This purpose is underscored by the fact that three classes of persons having potential liability on the notes/agreements exist under the JATC program.

First, there is the class who completes the five-year training program and remains employed only by a signatory union contractor throughout the repayment terms of the notes. This class is deemed to have "paid off" the loan by the "in kind"

credits provided by the terms of the applicable instruments by means of their employment by a signatory contractor.[4]

A second class of potentially obligated apprentices includes those like Rezendes who obtain employment with a nonsignatory contractor in the plumbing/pipe fitting industry prior to the expiration of the repayment terms of the notes/agreements. This class is deemed to have breached the agreement with the plaintiff.

But there is a third class of participants: those who do not satisfy the obligations of the notes/agreements by "in kind" credits because they leave the field of plumbing/pipe fitting completely behind, but yet are not expected to repay the cost of their "education". An apprentice in this class in the same circumstances as Rezendes—having received three years of educational training from the JATC program—does not have any obligation to repay the notes/agreements, because that individual did not obtain employment with a nonsignatory plumbing/pipe fitting contractor. It is the existence of this class of apprentices that establishes—as was stated by Mr. Thiel—in his testimony that the focus of the JATC arrangement is not to provide participants with an "educational loan", but rather to provide trained individuals as employees of signatory union contractors in the plumbing/pipe fitting industry. The nature of the training and instruction received by this class is identical to that received by the class of which Rezendes is a part, and merely because this class' members would not choose to utilize that

---

3. On page 6 of this post-trial brief, Rezendes has conceded that JATC is a "nonprofit institution" for the purposes of § 523(a)(8), and that "the nature of this benefit was educational". Rezendes has not conceded that the obligation to JATC is a "loan".

4. There is an additional problem with this manner of satisfaction of the notes: the "in

kind" credit is provided by services performed by the apprentice for other than the obligee of the apprentice's note/agreement, i.e., by services performed for the union contractors who provide the funds for JATC. This consideration is collateral to the issues addressed in this decision.

education in their future vocational pursuits does not in any manner negate the fact that they received training in plumbing/pipe fitting to the same extent as do those in Rezendes' group.

JATC's memorandum addresses the two cases of which the Court is aware which address programs similar to JATC's within the context of 11 U.S.C. § 523(a)(8): *In re Rosen*, 179 B.R. 935 (Bankr.D.Or.1995) and *In re Dressel*, 212 B.R. 611 (Bankr. E.D.Mo.1997). However, in both of those cases the facts to not disclose the existence of the above-designated third class of apprenticeship training program participants, and thus those cases provide no direct precedent for this case. The Court also notes that even if those cases did provide direct precedent, this Court is not bound by them and does not agree with their conclusions.

This case is more nearly controlled by the reasoning of *In re McFadyen*, 192 B.R. 328 (Bankr.N.D.N.Y.1995). In that case, the debtor participated in a nursing program at a hospital in Syracuse, New York, and was employed there for a period of time prior to being employed by the plaintiff who sought her debt to be determined to be nondischargeable. In connection with her employment with the plaintiff, the debtor entered into an agreement entitled "RN Scholarship Agreement", according to the terms of which the plaintiff (A.L. Lee Memorial Hospital) agreed to pay her tuition for completion of a nursing program in which she had been enrolled prior to her employment with the plaintiff. In exchange for this "funding", the debtor agreed to work for the plaintiff for three years, at the end of which time her indebtedness for the plaintiff's payment for her schooling would be deemed satisfied. The debtor left the employ of the plaintiff prior to the expiration of the three-year period, which triggered the plaintiff's action to

hold the debtor's obligation to it to be deemed to be an "educational loan" subject to the dischargeability exception of § 523(a)(8). As the Court stated:

The Court does have concerns, however, about the fact that the loan to the Debtor was made for the purpose of securing Debtor's services as a nurse. In *Segal*, as part of her employment contract, the debtor was provided with a loan to satisfy her obligation to the United States National Health Service. The monies were to be repaid by the debtor to her prospective employer over a period of thirty-six months. The court did not analyze whether the loan made to the debtor was for "educational purposes," electing simply to assume that it was for purposes of the court's analysis. *Segal, supra*, 57 F.3d at 347.

According to the House Report leading to the enactment of Code § 523(a)(8), Congress recognized that "educational loans are different from most loans. They are made *without business considerations*, without security, without cosigners, and relying for repayment solely on the debtor's future increased income resulting from the education." *U.S. Dep't of Health and Human Services v. Smith*, 807 F.2d 122, 125 (8th Cir.1986) (*quoting* H.R.Rep. No. 595, 95th Cong., 2d Sess., 133, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6094). (emphasis added). In this case, Jandrew testified that approval by the Director of Nursing was required before final approval of the Agreement with the Debtor. In addition, the loan was contingent on Debtor's continued employment with the Plaintiff for a period of three years. Had the Debtor provided services as a nurse for the required time period, her obligation would have been satisfied. On the other hand, if she terminated employment prematurely, Debtor was required to reim-

burse Plaintiff. In addition, if she failed to pass the licensing examination and was allowed to continue in Plaintiff's employ, she would also have to reimburse Plaintiff if said employment in a capacity other than an R.N. exceeded one year. The monies paid to Crouse Irving were inextricably tied to the Debtor's employment with the Plaintiff as a registered nurse for a period of three years. It was an "all or none" proposition. According to the terms of the Agreement, should the Debtor terminate her employment at any time prior to the three years, she was responsible for the full amount of the tuition, namely $7,645, plus 15% interest. Arguably, if she had quit after thirty-five months of employment on August 1, 1996, she would have been required to make full reimbursement. Clearly, the Plaintiff's program was intended not as an educational benefit to the Debtor, but rather it was intended to benefit the Plaintiff by assuring that it had a qualified nursing staff on a relatively long-term basis.

Clearly, these contingencies give emphasis to the fact that the monies were being made available on the basis of certain business considerations of the Plaintiff and not simply to allow the Plaintiff to finance an education. The Court, therefore, concludes that the loan was not made for "educational purposes," and the debt is deemed dischargeable.

192 B.R. 328, 332–333.

In like manner, the purpose of the JATC program is not to impart an educational benefit to persons participating in the apprenticeship program, but rather to secure a trained source of employees for the signatory union contractors by whom JATC's funding was exclusively provided.

■ Even if one were to analyze the phrase "educational loan" as two separate constituent concepts, i.e., "loan" and "educational", the result would be the same. In *In re Chambers,* 348 F.3d 650, 657 (7th Cir.2003), the Seventh Circuit stated the following with respect to the definition of "loan" under § 523(a)(8):

Although the term "loan" can be construed broadly under various dictionary definitions, [footnote omitted] we look to the common law definition of "loan" as articulated in *In re Grand Union Co.,* 219 F. 353, 356 (2d Cir.1914), and as paraphrased in *Renshaw,* 222 F.3d at 88. Under this interpretation, nonpayment of tuition qualifies as a loan "in two classes of cases": " 'where funds have changed hands,' or where 'there is an agreement ... whereby the college extends credit.' " *[In re] Mehta,* 310 F.3d [308] at 314 [(3rd Cir.2002)] (quoting *Renshaw,* 222 F.3d at 90*).* The agreement to transfer educational services in return for later payment "must be reached prior to or contemporaneous with the transfer" of those educational services. *Renshaw,* 222 F.3d at 88. This existence of a separate agreement acknowledging the transfer and delaying the obligation for repayment distinguishes a loan from a mere unpaid debt.

As noted by the bankruptcy and district courts, language in another provision of *§ 523(a)* reinforces this interpretation. In *§ 523(a)(2),* a provision designed to prevent the discharge of debts incurred through fraud, Congress excepted from discharge any "extension of credit." *11 U.S.C. § 523(a)(2).* This language is not employed in *§ 523(a)(8).* The use of the term "loan" in *§ 523(a)(8)* rather than "extension of credit," as employed in *§ 523(a)(2),* suggests that a narrower set of circumstances is contemplated in *§ 523(a)(8)* than in *§ 523(a)(2).*

Furthermore, although Congress has expanded consistently the scope of *§ 523(a)(8)*, it has retained the term "loan." The retention of the term "loan" suggests that Congress has delineated purposefully among the types of educational debts it means to except from discharge.

Although Congress may someday choose to protect any educational "extension of credit," we must conclude that the term "loan" does not reach so far. Expanding *§ 523(a)(8)* to include any "extension of credit" would protect educational resources, but it would impede the debtor's fresh start. Congress, not this court, must grapple with these competing policy considerations. [footnote omitted]

The facts in *Chambers* are not pertinent to the issues before the Court in this case. However, the import of the definition of "loan" in *Chambers* is that a "loan" is characterized by a transfer either of a direct transfer of money [which does not exist here], or the provision of services *to the obligee* in return for future payment. The existence of the above-designated third class of apprenticeship participants quite clearly establishes that the purpose of the promissory note/agreement used by JATC is not to obtain repayment at a future date, but rather to make certain that apprentices trained under the program do not engage in the plumbing/pipe fitting industry by means of employment with nonsignatory contractors. Because of the existence of that third class, and because the provision of services is *not* with respect to services provided to the obligee, the arrangement before the Court in this case cannot be considered to be a "loan".

Based upon the foregoing, the Court concludes that the obligations of Rezendes to JATC are *not* excepted from discharge under 11 U.S.C. § 523(a)(8).

This determination moots any issues relating to whether or not the non-exception of this debt from discharge would impose an undue hardship on Rezendes and his dependents.

IV. *Conclusion*

IT IS ORDERED, ADJUDGED AND DECREED that all obligations of Stephen Allen Rezendes to JATC, including those arising from the judgment of the United States District Court for the Northern District of Indiana in case number 2:01–CV–409, are not excepted from discharge by operation of 11 U.S.C. § 523(a)(8).

## APPENDIX

### APPRENTICE SCHOLARSHIP AGREEMENT BETWEEN
### APPRENTICE AND JOINT APPRENTICESHIP COMMITTEE

WHEREAS, the Joint Apprenticeship Committee of United Association Local Union No. 307 (hereinafter "Committee"), and Stephen Rezendes (hereinafter "Apprentice") understand and agree that the Committee will expend significant sums of money for the training of the Apprentice in the specialized skills necessary for employment in the Plumbing and Pipefitting Industry; and

WHEREAS, those sums of money will result in a substantial direct benefit, as well as a substantial indirect and intangible benefit, to the Apprentice from this training, which is valued, at a minimum, in the amount set forth in Paragraph 1 hereto (the "Scholarship Loan"); and

WHEREAS, the Committee will grant a Scholarship Loan to the Apprentice in the amount set forth in Paragraph 1 hereof for the 1st year of the Apprentice's training; and

WHEREAS, the Scholarship Loan amount for the Apprentice's subsequent years of training will be calculated on or before the anniversary date of this Agreement and a new Agreement and Promissory Note for that amount will be sent to the Apprentice and the Apprentice agrees to promptly execute such new Agreement and Promissory Note; and

WHEREAS, the Apprentice hereby understands and agrees that the Apprentice assumes certain obligations arising out of the training provided by the committee, including the obligation to repay the total Scholarship Loan made to the Apprentice by the committee for all years of training; and

WHEREAS, the Apprentice will repay the Scholarship Loan to the Committee pursuant to the terms set forth herein by either cash payments or in-kind credits received by working in the Plumbing and Pipefitting Industry for Employers under collective bargaining agreements whereby those Employers make contributions to the Committee;

NOW, THEREFORE, the Committee and Apprentice on this 8th day of Sept., 1997, hereby Agree and Covenant, for the good and valuable consideration set forth herein, as follows:

1. Scholarship Loan: The Committee and the Apprentice hereby agree that the cost of the training, necessary equipment, maintenance and cost of operation of the training facility, instructors' salaries (where applicable), and related materials, and the amount of the Scholarship Loan for the 1st year of training covered by this Agreement is $1,600.00, and that the Apprentice will execute this Agreement and the Promissory Note in that amount attached hereto as Exhibit 1, and deliver such executed Agreement and Promissory Note to the Committee.

2. Subsequent Years of Training: The Committee and the Apprentice hereby agree that the cost of the training, necessary equipment, maintenance and cost of operating the training facility, instructors' salaries (where applicable), and related materials for each subsequent year of training shall be calculated by the Committee on or before the anniversary date of this Agreement. That calculations shall be the amount of a new Agreement and Promissory Note that the Apprentice shall execute for that year of training. A separate Agreement and Promissory Note shall be signed for each year of training.

3. Term of Training: The Committee will provide training worth at least the amount loans to the Apprentice hereby during the period from Sept., 1997 , to June, 1998.

4. Repayment of Scholarship Loan: The Scholarship Loan may be repaid by the Apprentice in full either in cash as set forth in Exhibit 1 hereto, or by in-kind credits, as set forth in Paragraph 7 hereof.

5. Warranty of the Apprentice: The Apprentice agrees and warrants as a condition of receiving the Scholarship Loan that upon completion of the training provided pursuant to this Agreement, the Apprentice will neither seek nor accept employment from as Employer engaged in nor become an Employer engaged in, any general, mechanical, plumbing or pipefitting work or any other work covered by the Constitution of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, unless such employment is performed under the terms of a collective bargaining agreement

GROUP EXHIBIT A

that provides for the payment of contributions by such Employer to the Committee of like Joint apprenticeship of Training Committee.

6. **Breach of this Agreement.** It will constitute an immediate breach of this Agreement if the Apprentice accepts employment in the Plumbing and Pipefitting Industry from an Employer who does not have a collective bargaining agreement which provides for the payment of contributions to the Committee or like Joint Apprenticeship Committee.

7. **Repayment by In-Kind Credits:** An Apprentice, who works pursuant to a collective bargaining agreement for an Employer making payments to the committee or a like Joint Apprenticeship Committee or Training Committee, will receive a credit for each calendar year of such employment in accordance with the repayment schedule set out in the Promissory Note attached hereto as Exhibit 1, and all subsequent Promissory Notes signed by the Apprentice. The amount due the e Committee for the Scholarship Loan will be reduced by such amount in accordance therewith.

8. **All Amounts Due and Payable if Breach Occurs:** If the Apprentice breaches this Agreement, all amounts due and owing on the Scholarship Loan, reduced by an credit received by the Apprentice pursuant to Paragraph 7 hereof, or by any cash payments made, will become immediately due and payable, together with interest at the prime interest rate then prevailing at the NBD Bank in Hamond. Indiana, from the date of this Agreement, and all costs of collection hereof, including reasonable attorneys' fees and all court costs. The Apprentice hereby agrees and covenants to accept personal service and jurisdiction of any competent court determined by the Committee by the mailing of a copy of the complaint brought pursuant to this Agreement to the current address provided in Paragraph 10 hereof.

9. 9. **Waiver of Breach:** An inadvertent breach of this Agreement can be waived in writing by the committee in its sole discretion, and a waiver of such inadvertent breach of this Agreement will not be unreasonably withheld by the committee.

10. **Notice:** All notices under this Agreement will be sent to the Committee and Apprentice as follows:

Apprentice: Stephen Rezendes
2121 Sherwood Lake Dr.
Schererville, IN 46375

Committee: Plumbers Local Union No. 307 JATC
5638 Hohman Ave. PO Box 544
Hammond, IN 46320

The Apprentice hereby agrees to notify promptly the Committee of any change in the Apprentice's address.

11. **Plumbing and Pipefitting Industry:** As used herein the term "Plumbing and Pipefitting Industry" means any and all types of work covered by collective bargaining agreements to which the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-cio (hereinafter "United Association") and/or any affiliated Local Union are a party or under the trade jurisdiction of the United Association's Constitution; or in a related building trade.

Signed and agreed to this _15_ day of ___Sep___, 199_7_.

By: _____
 Signature & Title Joint Apprenticeship Committee

By: _____
 Apprentice

EXHIBIT A

### APPRENTICE
### PROMISSORY DEMAND NOTE FOR
### SCHOLARSHIP LOAN AGREEMENT

$1,600.00

I, Steve Rezendes, hereinafter known as Apprentice, hereby promise to pay to Plumbers Local Union No. 307 Joint Apprenticeship Committee (the "Committee"), on demand a Scholarship Loan of $1,600.00 (the "Loan Amount") in accordance with the terms and provisions of the Scholarship Loan Agreement between the undersigned and the Committee, dated September 8th, 1997 (the "Agreement"). That Loan Amount represents direct and indirect funds provided by the Committee.

I also understand that the Loan Amount will be reduced, in accordance with Paragraph 7 of the Agreement for every year I work for an Employer within the Plumbing and Pipefitting Industry who makes contributions, pursuant to a Collective Bargaining Agreement, to the Committee or a like Joint Apprenticeship or Training Committee, as follows:

| Years Worked | Percentage of Total Reduced | Annual Amount Reduced | Cumulative Amount Reduced | Net Amount Due |
|---|---|---|---|---|
| 1 | 10% | $160.00 | $ 160.00 | $1,440.00 |
| 2 | 15% | $240.00 | $ 400.00 | $1,200.00 |
| 3 | 20% | $320.00 | $ 720.00 | $ 880.00 |
| 4 | 25% | $400.00 | $1,120.00 | $ 480.00 |
| 5 | 30% 100% | $480.00 | $1,600.00 | $ |

I agree that if legal action is required to collect this Demand Note that I will pay interest at the prime rate prevailing as determined by the NBD Bank of Hammond, Indiana, from the date of this Note, plus reasonable attorneys' fees and all court costs.

NAME: Stephen A. Rezendes

ADDRESS 2121 Sherwood Lake DR. #6

CITY: Shereville, ~~Ill~~

STATE & ZIP CODE: In.

SIGNATURE & DATE: _____ 9-15-97

EXHIBIT A

## APPRENTICE SCHOLARSHIP AGREEMENT BETWEEN
## APPRENTICE AND JOINT APPRENTICESHIP COMMITTEE

WHEREAS, the Joint Apprenticeship Committee of United Association Local Union No. 307 (hereinafter "Committee"), and Stephen Rezendes (hereinafter "Apprentice") understand and agree that the Committee will expend significant sums of money for the training of the Apprentice in the specialized skills necessary for employment in the Plumbing and Pipefitting Industry; and

WHEREAS, those sums of money will result in a substantial direct benefit, as well as a substantial indirect and intangible benefit, to the Apprentice from this training, which is valued, at a minimum, in the amount set forth in Paragraph 1 hereto (the "Scholarship Loan"); and

WHEREAS, the Committee will grant a Scholarship Loan to the Apprentice in the amount set forth in Paragraph 1 hereof for the 2nd year of the Apprentice's training; and

WHEREAS, the Scholarship Loan amount for the Apprentice's subsequent years of training will be calculated on or before the anniversary date of this Agreement and a new Agreement and Promissory Note for that amount will be sent to the Apprentice and the Apprentice agrees to promptly execute such new Agreement and Promissory Note; and

WHEREAS, the Apprentice hereby understands and agrees that the Apprentice assumes certain obligations arising out of the training provided by the committee, including the obligation to repay the total Scholarship Loan made to the Apprentice by the committee for all years of training; and

WHEREAS, the Apprentice will repay the Scholarship Loan to the Committee pursuant to the terms set forth herein by either cash payments or in-kind credits received by working in the Plumbing and Pipefitting Industry for Employers under collective bargaining agreements whereby those Employers make contributions to the Committee;

NOW, THEREFORE, the Committee and Apprentice on this 14th day of Sept., 1998, hereby Agree and Covenant, for the good and valuable consideration set forth herein, as follows:

1. Scholarship Loan: The Committee and the Apprentice hereby agree that the cost of the training, necessary equipment, maintenance and cost of operation of the training facility, instructors' salaries (where applicable), and related materials, and the amount of the Scholarship Loan for the 2nd year of training covered by this Agreement is $1440.00, and that the Apprentice will execute this Agreement and the Promissory Note in that amount attached hereto as Exhibit 1, and deliver such executed Agreement and Promissory Note to the Committee.

2. Subsequent Years of Training: The Committee and the Apprentice hereby agree that the cost of the training, necessary equipment, maintenance and cost of operating the training facility, instructors' salaries (where applicable), and related materials for each subsequent year of training shall be calculated by the Committee on or before the anniversary date of this Agreement. That calculations shall be the amount of a new Agreement and Promissory Note that the Apprentice shall execute for that year of training. A separate Agreement and Promissory Note shall be signed for each year of training.

3. Term of Training: The Committee will provide training worth at least the amount loans to the Apprentice hereby during the period from Sept., 1998 , to June, 1999.

4. Repayment of Scholarship Loan: The Scholarship Loan may be repaid by the Apprentice in full either in cash as set forth in Exhibit 1 hereto, or by in-kind credits, as set forth in Paragraph 7 hereof.

5. Warranty of the Apprentice: The Apprentice agrees and warrants as a condition of receiving the Scholarship Loan that upon completion of the training provided pursuant to this Agreement, the Apprentice will neither seek nor accept employment from as Employer engaged in nor become an Employer engaged in, any general, mechanical, plumbing or pipefitting work or any other work covered by the Constitution of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, unless such employment is performed under the terms of a collective bargaining agreement

EXHIBIT B

that provides for the payment of contributions by such Employer to the Committee of like Joint apprenticeship of Training Committee.

6. Breach of this Agreement. It will constitute an immediate breach of this Agreement if the Apprentice accepts employment in the Plumbing and Pipefitting Industry from an Employer who does not have a collective bargaining agreement which provides for the payment of contributions to the Committee or like Joint Apprenticeship Committee.

7. Repayment by In-Kind Credits: An Apprentice, who works pursuant to a collective bargaining agreement for an Employer making payments to the committee or a like Joint Apprenticeship Committee or Training Committee, will receive a credit for each calendar year of such employment in accordance with the repayment schedule set out in the Promissory Note attached hereto as Exhibit 1, and all subsequent Promissory Notes signed by the Apprentice. The amount due the e Committee for the Scholarship Loan will be reduced by such amount in accordance therewith.

8. All Amounts Due and Payable if Breach Occurs: If the Apprentice breaches this Agreement, all amounts due and owing on the Scholarship Loan, reduced by an credit received by the Apprentice pursuant to Paragraph 7 hereof, or by any cash payments made, will become immediately due and payable, together with interest at the prime interest rate then prevailing at the NBD Bank in Hamond, Indiana, from the date of this Agreement, and all costs of collection hereof, including reasonable attorneys' fees and all court costs. The Apprentice hereby agrees and covenants to accept personal service and jurisdiction of any competent court determined by the Committee by the mailing of a copy of the complaint brought pursuant to this Agreement to the current address provided in Paragraph 10 hereof.

9. 9. Waiver of Breach: An inadvertent breach of this Agreement can be waived in writing by the committee in its sole discretion, and a waiver of such inadvertent breach of this Agreement will not be unreasonably withheld by the committee.

10. Notice: All notices under this Agreement will be sent to the Committee and Apprentice as follows:

Apprentice: Stephen Rezendes
875 W. 72nd Ct.
Merrillville, IN 46410

Committee: Plumbers Local Union No. 307 JATC
5638 Hohman Ave. PO Box 544
Hammond, IN 46320

The Apprentice hereby agrees to notify promptly the Committee of any change in the Apprentice's address.

11. Plumbing and Pipefitting Industry: As used herein the term "Plumbing and Pipefitting Industry" means any and all types of work covered by collective bargaining agreements to which the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada. AFL-cio (hereinafter "United Association") and/or any affiliated Local Union are a party or under the trade jurisdiction of the United Association's Constitution; or in a related building trade.

Signed and agreed to this _14_ day of __Sep._____, 199_8_.

By: _____
 Signature & Title Joint Apprenticeship Committee

By: _____
 Apprentice

EXHIBIT B

I HEREBY ACKNOWLEDGE THAT I HAVE RECEIVED THE LATEST UPDATED COPY OF THE "STATEMENT OF POLICY" COVERING APPRENTICES INDENTURED TO THE PLUMBERS LOCAL 307 JOINT APPRENTICESHIP AND TRAINING COMMITTEE. I FURTHER ACKNOWLEDGE THAT THE POLICY WAS REVIEWED WITH ME BY THE PLUMBERS LOCAL 307 JOINT APPRENTICESHIP AND TRAINING COMMITTEE AND/OR ITS REPRESENTATIVES. I UNDERSTAND ITS CONTENT AND DO HEREBY AGREE TO ABIDE WHOLLY BY SAID POLICY.

Furthermore, I _Stephen A. Rezendes_, SS# _52225 6243_

hereby give my consent and agree to release any or all Employment Records

requested by the Plumbers Local 307 Joint Apprentice Committee.

_____ _Sep. 14, 1998_
Signature Date

EXHIBIT B

14

456

## APPRENTICE
## PROMISSORY DEMAND NOTE FOR
## SCHOLARSHIP LOAN AGREEMENT

<u>$1,440.00</u>

I, <u>Stephen Rezendes</u>, hereinafter known as Apprentice, hereby promise to pay to Plumbers Local Union No. 307 Joint Apprenticeship Committee (the "Committee"), on demand a Scholarship Loan of <u>$1,440.00</u> (the "Loan Amount") in accordance with the terms and provisions of the Scholarship Loan Agreement between the undersigned and the Committee.

I also understand that the Loan Amount will be reduced, in accordance with Paragraph 7 of the Agreement for every year I work for an Employer within the Plumbing and Pipefitting Industry who makes contributions, pursuant to a Collective Bargaining Agreement, to the Committee or a like Joint Apprenticeship or Training Committee, as follows:

| Years Worked | Percentage of Total Reduced | Annual Amount Reduced | Cumulative Amount Reduced | Net Amount Due |
|---|---|---|---|---|
| 1 | 10% | $160.00 | $ 160.00 | $1,440.00 |
| 2 | 15% | $240.00 | $ 400.00 | $1,200.00 |
| 3 | 20% | $320.00 | $ 720.00 | $ 880.00 |
| 4 | 25% | $400.00 | $1,120.00 | $ 480.00 |
| 5 | 30% 100% | $480.00 | $1,600.00 | $ - 0 - |

I agree that if legal action is required to collect this Demand Note that I will pay interest at the prime rate prevailing as determined by the NBD Bank of Hammond, Indiana, from the date of this Note, plus reasonable attorneys' fees and all court costs.

NAME: Stephen Rezendes
ADDRESS: 875 W. 72nd Ct.
CITY: Merrillville, IN 46410

SIGNATURE & DATE: _____ Sep 14. 1995

EXHIBIT B

APPRENTICE
SCHOLARSHIP AGREEMENT
BETWEEN
APPRENTICE AND JOINT APPRENTICESHIP COMMITTEE

WHEREAS, the Joint Apprenticeship Committee of United Association Local Union No. 307 (hereinafter "Committee"), and Stephen Rezendes (hereinafter "Apprentice") understand and agree that the Committee will expend significant sums of money for the training of the Apprentice in the specialized skills necessary for employment in the Plumbing and Pipefitting Industry; and

WHEREAS, those sums of money will result in a substantial direct benefit, as well as a substantial indirect and intangible benefit, to the Apprentice from this training, which is valued, at a minimum, in the amount set forth in Paragraph 1 hereto (the "Scholarship Loan"); and

WHEREAS, the Committee will grant a Scholarship Loan to the Apprentice in the amount set forth in Paragraph 1 hereof for the 3rd year of the Apprentice's training; and

WHEREAS, the Scholarship Loan amount for the Apprentice's subsequent years of training will be calculated on or before the anniversary date of this Agreement and a new Agreement and Promissory Note for that amount will be sent to the Apprentice and the Apprentice agrees to promptly execute such new Agreement and Promissory Note; and

WHEREAS, the Apprentice hereby understands and agrees that the Apprentice assumes certain obligations arising out of the training provided by the Committee, including the obligation to repay the total Scholarship Loan made to the Apprentice by the Committee for all years of training; and

WHEREAS, the Apprentice will repay the Scholarship Loan to the Committee pursuant to the terms set forth herein by either cash payments or in-kind credits received by working in the Plumbing and Pipefitting Industry for Employers under collective bargaining agreements whereby those Employers make contributions to the Committee;

NOW, THEREFORE, the Committee and Apprentice on this 13th day of Sept , 1999, hereby Agree and Covenant, for the good and valuable consideration set forth herein, as follows:

1. Scholarship Loan: The Committee and the Apprentice hereby agree that the cost of the training, necessary equipment, maintenance and cost of operation the training facility, instructors' salaries (where applicable), and related materials, and the amount of the Scholarship Loan for the 3rd year of training covered by this Agreement is $1200.00 , and that the Apprentice will execute this Agreement and the Promissory Note in that amount attached hereto as Exhibit 1, and deliver such executed Agreement and Promissory Note to the Committee.

EXHIBIT C

458

2. <u>Subsequent Years of Training</u>: The Committee and the Apprentice hereby agree that the cost of the training, necessary equipment, maintenance and cost of operating the training facility, instructors' salaries (where applicable), and related materials for each subsequent year of training shall be calculated by the Committee on or before the anniversary date of this agreement. That calculation shall be the amount of a new Agreement and Promissory Note that the Apprentice shall execute for that year of training. A separate Agreement and Promissory Note shall be signed for each year of training.

3. <u>Term of Training</u>: The Committee will provide training worth at least the amount loaned to the Apprentice hereby during the period from _____ Sept _____, 199, to June _____, XXX 2000.

4. <u>Repayment of Scholarship Loan</u>: The Scholarship Loan may be repaid by the Apprentice in full either in cash as set forth in Exhibit 1 hereto, or by in-kind credits, as set forth in Paragraph 7 hereof.

5. <u>Warranty of the Apprentice</u>: The Apprentice agrees and warrants as a condition of receiving the Scholarship Loan that upon completion of the training provided pursuant to this Agreement, the Apprentice will neither seek nor accept employment from an Employer engaged in nor become an Employer engaged in, any general, mechanical, plumbing or pipefitting work or any other work covered by the Constitution of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, unless such employment is performed under the terms of a collective bargaining agreement that provides for the payment of contributions by such Employer to the Committee or like Joint Apprenticeship of Training Committee.

6. <u>Breach of this Agreement</u>: It will constitute an immediate breach of this Agreement if the Apprentice accepts employment in the Plumbing and Pipefitting Industry from an Employer who does not have a collective bargaining agreement which provides for the payment of contributions to the Committee or like Joint Apprenticeship Committee.

EXHIBIT C

**7. Repayment by In-Kind Credits:** An Apprentice, who works pursuant to a collective bargaining agreement for an Employer making payments to the Committee or a like Joint Apprenticeship Committee or Training Committee, will receive a credit for each calendar year of such employment in accordance with the Repayment Schedule set out in the Promissory Note attached hereto as Exhibit 1, and all subsequent Promissory Notes signed by the Apprentice. The amount due the Committee for the Scholarship Loan will be reduced by such amount in accordance therewith.

**8. All Amounts Due and Payable if Breach Occurs:** If the Apprentice breaches this Agreement, all amounts due and owing on the Scholarship Loan, reduced by any credit received by the Apprentice pursuant to Paragraph 7 hereof, or by any cash payments made, will become immediately due and payable, together with interest at the prime interest rate then prevailing at the _____NBD_____ Bank in _____Hammond, IN_____, from the date of this Agreement, and all costs of collection hereof, including reasonable attorneys' fees and all court costs. The Apprentice hereby agrees and covenants to accept personal service and jurisdiction of any competent court determined by the Committee by the mailing of a copy of the Complaint brought pursuant to this Agreement to the current address provide in Paragraph 10 hereof.

**9. Waiver of Breach:** An inadvertent breach of this Agreement can be waived in writing by the Committee in its sole discretion, and a waiver of such inadvertent breach of this Agreement will not be unreasonably withheld by the Committee.

**10. Notice:** All notices under this Agreement will be sent to the Committee and Apprentice as follows:

Apprentice: _STEPHEN A. REZENDES_
Name
_875 W. 72nd. Ct._
Address
_Merrillville, IN._ _46410_
City /State Zip

Committee: _____
Name

_____
Address
_____
City State Zip

 The Apprentice hereby agrees to notify promptly the Committee of any change in the Apprentice's Address.

EXHIBIT C

11. Plumbing and Pipefitting Industry: As used herein.the term "Plumbing and Pipefitting Industry" means any and all types of work covered by collective bargaining agreements to which the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO (hereinafter "United Association") and/or any affiliated Local Union are a party or under the trade jurisdiction of the United Association's Constitution; or in a related building trade.

Signed and agreed to this /3 day of S c p ,1979.

By _____
 Signature and Title
 Joint Apprenticeship Committee

By _____
 Apprentice

EXHIBIT C

APPRENTICE
PROMISSORY DEMAND NOTE FOR
SCHOLARSHIP LOAN AGREEMENT

$ 1200.00

I, __Stephen Rezendes__ hereinafter known as Apprentice, hereby promise to pay to __Plumbers L.U. #307__ Joint Apprenticeship Committee (the "Committee"), on demand a Scholarship Loan of $ 1200.00(the "Loan Amount") in accordance with the terms and provisions of the Scholarship Loan Agreement between the undersigned and the Committee, dated __Sept__, 19__99__ (the "Agreement"). That Loan Amount represents direct and indirect funds provided by the Committee.

I also understand that the Loan Amount will be reduced, in accordance with Paragraph 7 of the Agreement for every year I work for an Employer within the Plumbing and Pipefitting Industry who makes contributions, pursuant to a collective bargaining agreement, to the Committee or a like Joint Apprenticeship or Training Committee, as follows:

| Years Worked | Percent of Total Reduced | Annual Amount Reduced | Cumulative Amount Reduced | Net Amount Due |
|---|---|---|---|---|
| 1 | 10% | $160.00 | $160.00 | $1440.00 |
| 2 | 15% | $240.00 | $400.00 | $1200.00 |
| 3 | 20% | $320.00 | $720.00 | $880.00 |
| 4 | 25% | $400.00 | $1120.00 | $480.00 |
| 5 | 30% | $480.00 | $1600.00 | $0 |
| | 100% | | | |

I agree that if legal action is required to collect this Demand Note that I will pay interest at the prime rate prevailing as determined by the __NBD__ Bank of __Hammond, IN__, from the date of this Note, plus reasonable attorneys' fees and all court costs.

NAME: STEPHEN A. REZENDES
 Please Print
ADDRESS: 875 W. 72nd ct.
Merrillville , In . 46410
City State Zip

Date: 9-13-99

Apprentice Signature

EXHIBIT C

462 

I HEREBY ACKNOWLEDGE THAT I HAVE RECEIVED THE LATEST UPDATED COPY OF THE "STATEMENT OF POLICY" COVERING APPRENTICES INDENTURED TO THE PLUMBERS LOCAL 307 JOINT APPRENTICESHIP AND TRAINING COMMITTEE. I FURTHER ACKNOWLEDGE THAT THE POLICY WAS REVIEWED WITH ME BY THE PLUMBERS LOCAL 307 JOINT APPRENTICESHIP AND TRAINING COMMITTEE AND/OR ITS REPRESENTATIVES. I UNDERSTAND ITS CONTENT AND DO HEREBY AGREE TO ABIDE WHOLLY BY SAID POLICY.

Furthermore, I _STEPHEN REZENDES_, SS# _572256243_

Hereby give my consent and agree to release any or all Employment

Records requested by the Plumbers Local 307 Joint Apprentice

Committee.

_____ _9-13-99_
Signature Date

14